IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RUSSELL GRUNDY,<br>[DOB: 05/04/1969]<br><br>　　　　　Defendant. | No. 17-05029-01-CR-SW-SRB<br><br>**COUNTS 1 through 16**<br>18 U.S.C. § 1343<br>NMT 20 Years Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Years Supervised Release<br>Class C Felony<br><br>**COUNTS 17 through 26**<br>18 U.S.C. § 1957<br>NMT 10 Years Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Years Supervised Release<br>Class C Felony<br><br>**COUNTS 27 through 30**<br>18 U.S.C. § 1014<br>NMT 30 Years Imprisonment<br>NMT $1,000,000 Fine<br>NMT 3 Years Supervised Release<br>Class B Felony<br><br>**FORFEITURE ALLEGATION**<br>18 U.S.C. § 982<br><br>$100 Special Assessment per felony |

# I N D I C T M E N T

THE GRAND JURY CHARGES THAT:

At all times material to this Indictment:

## Introduction

1.　　Beginning in 2002, and continuing through September 27, 2015, said dates being approximate, the defendant, **RUSSELL GRUNDY,** was the owner of Innovative Objects, LLC,

1

(IO), PILR Technology, LLC, (PILR), Choice Technologies, LLC, (CT), Wyerless, LLC, (Wyerless), and Audio Input, LLC, (AI).

2. All of the aforementioned companies owned by the defendant were various companies that focused on various fields of advanced technologies ranging from software development, to computer security, to addressing the software and hardware technological needs of its clientele.

3. As the owner of the aforementioned companies, the defendant was contracted by Land O'Lakes, Inc. (LOL), and its subsidiary, Nutra Blend, LLC (NB), to create propriety software to inventory, track, and coordinate the disbursement of products sold by LOL and NB to its clientele. Furthermore, the defendant, through his companies, contracted with LOL and NB to provide technical assistance with the use, upkeep and maintenance of the software created and provided by his companies for LOL and NB.

4. The defendant also engaged Miami Nations Enterprise (MNE) in negotiations for MNE to provide financial assistance in the form of loans, and for MNE to purchase a controlling interest in all of the technology based companies owned by the defendant. The basis for the defendant's proposals to MNE for loans and the purchase of his companies was on his representation that his companies had been awarded a contract from Wal-Mart Stores, Inc., to develop and provide them with information technology services worth $3,500,000.

5. In August of 2014, MNE loaned the defendant money and paid the defendant additional monies to a) purchase a seventy-percent (70%) interest in the defendant's technology based companies; and b) cover the cost associated with software purchases, hardware purchases, and the training necessary to obtain a $3,500,000 information technology services contract with Wal-Mart Stores, Inc., based on the defendant's representations.

## COUNTS 1-6
(Wire Fraud – 18 U.S.C. § 1343)

### The Scheme

6. Beginning on or about January of 2004, and continuing to or about September 27, 2015, said dates being approximate, the defendant, as the owner of IO, contracted with LOL and NB to create a proprietary software, known as NBI, for the purpose of inventorying, tracking, and distributing products sold by LOL and NB to its clientele. After the propriety software program and equipment were created by the defendant's companies, LOL and NB paid the defendant to own and use the NBI software program.

7. In addition to the creation of NBI, the defendant also contracted with LOL and NB to provide equipment and technical support to ensure that the NBI software operated properly.

8. During the monthly and yearly billing process, beginning on or about January 2004, and continuing to or about September 27, 2015, the defendant caused invoices to be issued to LOL and NB that stated the monies owed to IO.

9. The defendant represented that his billing invoices and the subsequent monies paid by LOL and NB were for technical support and the payment of licensing fees owed to third party companies for the use of their computer software programs.

10. The defendant represented to LOL and NB that the third party software programs were built into the NBI software and were essential to the successful operation of the NBI software.

11. The defendant represented that failure to pay the third party licensing fees would result in the discontinued use of the supporting computer software programs, thereby causing the NBI program to fail.

12. The defendant represented to LOL and NB that the payments made to his company, IO, were collected and then remitted to third party license holders, including a company known as Code-X.

13. LOL and NB paid the invoices sent from IO, resulting in either the issuance of a check or a wire transmission that transferred monies from the bank accounts of LOL and NB to an account controlled by the defendant and his businesses.

14. LOL and NB authorized the payment of the defendant's invoices believing his representations that his company, IO, had provided the technical assistance stated on the invoices and that the third party licensee fees would be remitted to the appropriate companies, including a company known as Code-X.

15. Once the defendant received LOL's and NB's funds, the defendant did not pay third party licensee fees as he had previously represented, because neither Code-X nor other third party licensee fees existed.

16. At various times from January 24, 2012, through August 7, 2015, said dates being approximate, while the defendant owned IO, he knowingly executed the aforementioned scheme to defraud LOL and NB to obtain monies from these companies by means of false and fraudulent pretenses, representations and promises.

17. On several occasions, over a three-year time span, while owning and operating IO, the defendant caused the interstate transmission of electronic transfers of monies from the bank accounts of LOL and NB, to the bank accounts under the defendant's control based on his misrepresentation that these monies would be used to pay third party licensee fees, but in fact were used by the defendant for his personal or unrelated expenses.

### The Offense

18. On or about the dates set forth below, in the Western District of Missouri, and elsewhere, the defendant, **RUSSELL GRUNDY**, having devised and intending to devise the aforementioned scheme and artifice to defraud LOL and NB, for the purpose of obtaining money and property by means of false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted in interstate commerce, wire and radio sounds and signals, that is, electronic wire transmissions transferring monies from LOL's and NB's bank account, to **RUSSELL GRUNDY's** IO bank account causing the electronic transfers to be processed via interstate wire transactions, and such instances are listed below, each being a separate and additional Count of this Indictment:

| COUNT | LICENSURE FEE INVOICE(S) DATE & AMOUNT | | WIRE TRANSMISSION DATE & AMOUNT | |
|---|---|---|---|---|
| 1 | August 1, 2013<br>August 1, 2013<br>August 1, 2013 | $6,299.91<br>$4,199.94<br>$4,199.94 | September 19, 2013 | $14,699.79 |
| 2 | October 31, 2014<br>November 30, 2014 | $34,891.20<br>$365,488.26 | January 23, 2015 | $578,729.83 |
| 3 | December 31, 2014 | $93,000.00 | July 22, 2015 | $116,918.81 |
| 4 | January 1, 2015 | $45,371.80 | April 13, 2015 | $61,764.18 |
| 5 | July 1, 2015 | $45,371.80 | July 13, 2015 | $45,371.80 |
| 6 | April 1, 2015 | $45,371.80 | April 9, 2015 | $45,371.80 |

19. All in violation of Title 18, United States Code, Section 1343.

### COUNTS 7-16
(Wire Fraud – 18 U.S.C. § 1343)

### The Scheme

20. Beginning on or about March of 2014, and continuing on or about September 27, 2015, said dates being approximate, the defendant, as the owner of IO, PILR, CT, Wyerless, and AI, engaged in negotiations with MNE to obtain loans that the defendant represented would be

used to obtain software, hardware and training for IO personnel that would allow his company to be awarded an information technology services contract from Wal-Mart Stores, Inc.

21. At approximately the same time, the defendant entered negotiations with MNE to purchase a majority share of his companies, which would become subsidiaries of a larger umbrella organization known as GMNE.

22. During these negotiations, the defendant represented to officials with MNE that Wal-Mart Stores, Inc., had conditionally awarded his company a $3,500,000 contract to provide information technology services.

23. The defendant presented numerous emails, invoices, conditional award letters, and other documents to MNE officials as support of his representations of the Wal-Mart Stores, Inc., $3,500,000 contract.

24. Based on the defendant's aforementioned representations, on or about May 19, 2014, continuing through June 24, 2015, said dates being approximate, officials with MNE lent monies to the defendant and his companies for the purpose of obtaining software, hardware, and training necessary to be compliant with the requirements set forth by Wal-Mart Stores, Inc., and for the purpose of obtaining a $3,500,000 information technology services contract.

25. Furthermore, based on the defendant's aforementioned representations, on or about August 25, 2014, said date being approximate, MNE paid the defendant personally to purchase a seventy-percent (70%) interest in his technology based companies.

26. After paying the aforementioned monies, officials with MNE discovered that neither the defendant, or any of his companies, had applied for or been awarded, conditionally or otherwise, any contract with Wal-Mart Stores, Inc. Further, MNE officials determined that the emails, conditional contract award, invoices, and bank deposits, previously presented by the

defendant to support his representations of a contract with Wal-Mart Stores, Inc., had been fraudulently created.

### The Offense

27. On or about the dates set forth below, in the Western District of Missouri, and elsewhere, the defendant, **RUSSELL GRUNDY**, having devised and intending to devise the aforementioned scheme and artifice to defraud MNE, for the purpose of obtaining money and property by means of false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted in interstate commerce, wire and radio sounds and signals, that is, electronic wire transmissions transferring monies from MNE's bank account to **RUSSELL GRUNDY's** IO bank account causing the electronic transfers to be processed via interstate wire transactions, and such instances are listed below, each being a separate and additional Count of this Indictment:

| COUNT | DATE | AMOUNT | ITEM |
|---|---|---|---|
| 7 | May 19, 2014 | $300,000 | Wire to Liberty Bank account ending 4295 |
| 8 | July 22, 2014 | $400,000 | Wire to Liberty Bank account ending 4295 |
| 9 | August 25, 2014 | $2,000,000 | Wire to Wells Fargo Bank account ending 1622 |
| 10 | August 27, 2014 | $400,000 | Wire to Liberty Bank account ending 4295 |
| 11 | September 29, 2014 | $715,000 | Wire to Liberty Bank account ending 4295 |
| 12 | October 14, 2014 | $425,000 | Wire to Liberty Bank account ending 4295 |
| 13 | November 10, 2014 | $175,000 | Wire to Liberty Bank account ending 4295 |
| 14 | January 5, 2015 | $325,000 | Wire to Liberty Bank account ending 4295 |
| 15 | February 26, 2015 | $850,000 | Wire to Liberty Bank account ending 4295 |
| 16 | April 12, 2015 | $400,000 | Wire to Liberty Bank account ending 4295 |

28. All in violation of Title 18, United States Code, Section 1343.

### COUNT 17-26
(Money Laundering – 18 U.S.C. § 1957)

29. The Grand Jury adopts and re-alleges the facts set forth in paragraphs 1 through 28.

30. On or about the dates set forth below, in the Western District of Missouri and elsewhere, the defendant **RUSSELL GRUNDY**, did knowingly engage and attempt to engage in

monetary transactions, in criminally deprived property of a value greater than $10,000, such property having been derived from specified unlawful activities, to wit: Wire Fraud, as alleged in Counts 1 through 16 of this indictment, contrary to the provisions of Title 18, United States Code, Section 1343:

| COUNT | AMOUNT | DATE | MONETARY TRANSACTION | SPECIFIED UNLAWFUL ACTIVITY |
|---|---|---|---|---|
| 17 | $14,000 | September 23, 2013 | Transfer to Liberty Bank account ending 6697 | Wire Fraud |
| 18 | $150,000 | May 20, 2014 | Transfer to Liberty Bank Account ending 7821 | Wire Fraud |
| 19 | $100,000 | July 23, 2014 | Transfer to Liberty Bank account ending 6749 | Wire Fraud |
| 20 | $265,000 | August 28, 2014 | Wire to Liberty Bank | Wire Fraud |
| 21 | $20,000 | August 28, 2014 | Check Numbered 95 | Wire Fraud |
| 22 | $150,000 | September 8, 2014 | Check Numbered 97 | Wire Fraud |
| 23 | $1,500,000 | September 9, 2014 | Transfer to Wells Fargo Bank account ending 1721 | Wire Fraud |
| 24 | $500,000 | September 30, 2014 | Transfer to Liberty Bank account ending 7821 | Wire Fraud |
| 25 | $250,000 | February 6, 2015 | Wire to Welch State Bank, account ending 3904 | Wire Fraud |
| 26 | $820,000 | March 19, 2015 | Transfer to Liberty Bank account ending 7821 | Wire Fraud |

31.     All in violation of Title 18, United States Code, Section 1957.

## COUNT 27
(False Statement on a Loan Application – 18 U.S.C. § 1014)

32.     On or about October 17, 2014, said date being approximate, in Jasper County, within the Western District of Missouri, and elsewhere, the defendant, **RUSSELL GRUNDY**, did knowingly make a material false statement and report for the purpose of influencing the action of UMB Bank, in applying for a loan in the amount of $5,440,800, which was a financial institution that was at the time of this incident, was insured by the Federal Deposit Insurance Corporation

(FDIC), in connection with the submission of a loan application, all in violation of Title 18, United States Code, Section 1014.

## COUNT 28
(False Statement on a Loan Application – 18 U.S.C. § 1014)

33. On or about October 17, 2014, said date being approximate, in Jasper County, within the Western District of Missouri, and elsewhere, the defendant, **RUSSELL GRUNDY**, did knowingly make a material false statement and report for the purpose of influencing the action of UMB Bank in applying for a loan in the amount of $2,750,000, which was a financial institution that was at the time of this incident, was insured by the Federal Deposit Insurance Corporation (FDIC), in connection with the submission of a loan application, all in violation of Title 18, United States Code, Section 1014.

## COUNT 29
(False Statement on a Loan Application – 18 U.S.C. § 1014)

34. On or about October 17, 2014, said date being approximate, in Jasper County, within the Western District of Missouri, and elsewhere, the defendant, **RUSSELL GRUNDY**, did knowingly make a material false statement and report for the purpose of influencing the action of UMB Bank in applying for a loan in the amount of $3,200,000, which was a financial institution that was at the time of this incident, was insured by the Federal Deposit Insurance Corporation (FDIC), in connection with the submission of a loan application, all in violation of Title 18, United States Code, Section 1014.

## COUNT 30
(False Statement on a Loan Application – 18 U.S.C. § 1014)

35. On or about August 27, 2015, said date being approximate, in Jasper County, within the Western District of Missouri, and elsewhere, the defendant, **RUSSELL GRUNDY**, did

knowingly make a material false statement and report for the purpose of influencing the action of the People's Bank of Seneca in applying for a loan in the amount of $1,850,000, which was a financial institution that was at the time of this incident, was insured by the Federal Deposit Insurance Corporation (FDIC), in connection with the submission of a loan application, all in violation of Title 18, United States Code, Section 1014.

## FORFEITURE ALLEGATION

35. The allegations of Counts 1 through 16 in this indictment are hereby repeated and re-alleged as if fully set forth herein for the purpose of alleging forfeiture to the United States pursuant to the provision of Title 18, United States Code, Sections 981(a)(1)(C), 1967(c)(7), 1961(1), and Title 28, United States Code, Section 2461(c).

36. The property, real and personal, of the defendant **RUSSELL GRUNDY**, obtained, directly or indirectly, as a result of the violation of law set out in Counts 1 through 16 of this indictment and which constitutes, is derived from, and is traceable to the proceeds obtained directly or indirectly from the criminal conduct alleged in Counts 1 through 16 of this indictment, are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C).

37. Specifically subject to forfeiture is a monetary judgment that constitutes the sum of the aggregate proceeds of the fraudulent scheme in United States Currency that resulted directly from the commission of the offenses alleged in Counts 1 through 16 in the amount of at least $26,060,000.00.

38. If any of the property described in the above paragraph, as a result of any act or omission of the defendant,

    (A) cannot be located upon the exercise of due diligence;

(B) has been transferred to, sold to, or deposited with a third person;

(C) has been placed beyond the jurisdiction of the Court;

(D) has been substantially diminished in value; and/or

(E) has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), which is incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the property described in paragraph 18 above, or elsewhere, as being subject to forfeiture.

**A TRUE BILL**

*/s/ Gary Tombridge*
FOREPERSON OF THE GRAND JURY

*/s/ Patrick Carney*
Patrick Carney
Assistant United States Attorney

*/s/ Casey Clark*
Casey Clark
Assistant United States Attorney

DATED: 07/11/2017

11

Case 3:17-cr-05029-SRB    Document 1    Filed 07/11/17    Page 11 of 11